611 So.2d 658 (1992)
STATE of Louisiana In the Interest of M.L.
No. 92-CA-1097.
Court of Appeal of Louisiana, Fourth Circuit.
August 27, 1992.
On Rehearing December 15, 1992.
Writ Denied February 19, 1993.
Sherry A. Watters, New Orleans, for appellant State of La. Dept. of Social Services.
Deborah Cunningham Foshee, Kathy Manchester Borbas, J.M. White, Gordon, Arata, McCollam & Duplantis, New Orleans, for appellee M.L.
*659 Steven Scheckman, New Orleans, for appellant Kellie Dickinson.
Elizabeth Beauchamp, Orleans Indigent Defender Program, New Orleans, for appellee mother.
Mark McTernan, New Orleans, for appellees Uncle and Aunt of the child.
Before SCHOTT, C.J., and CIACCIO and WALTZER, JJ.
SCHOTT, Chief Judge.
In this "child in need of care" proceeding the trial court ordered the State of Louisiana through its Department of Social Services, Office of Community Services (hereafter OCS) to retain custody of M.L. and transferred the physical custody of the child from a foster parent to the child's maternal uncle and his wife (hereafter referred to as "the relatives"). OCS and the foster parent have appealed. The principal issue is whether the trial court abused its discretion in favoring the relatives over the foster parent for the custody of the child. Other issues are whether the trial court could grant physical custody to the relatives while maintaining legal custody in OCS and whether the foster parent had the right to intervene in the proceedings and has the standing to appeal from the judgment.
On June 4, 1991, the Juvenile Court issued an instanter order placing the child born on May 14, 1990, in the temporary custody of OCS. Following a continued custody hearing on June 5, 1991, the court awarded provisional custody to OCS. After a dispositional hearing on September 23, the court found a necessity for the child to be in the protective custody of OCS for six months or until modification by the court; ordered OCS to maintain supervision of the child while in foster care and to continue with efforts to locate suitable relatives for placement of the child; and scheduled a six months review hearing for March 23, 1992. On December 4, 1991, OCS conducted an Administrative Review of its case plan and on February 24 the court held a simultaneous case review hearing and dispositional review hearing resulting in the judgment presently on appeal.
In compliance with the September 24, 1991, judgment of the court OCS succeeded in locating the child's relatives in Pennsylvania. The maternal grandparents at first expressed an interest in taking the child, but later eliminated themselves as custodians. When the administrative review of the case plan took place on December 4, 1991, OCS reported that the mother had not cooperated with the agency, had not complied with the case plan in general, and had not even visited the child since she came into custody. Although the goal of the case plan was said to be reunification of the mother and child, the institution of proceedings to terminate the parental rights of the mother was then being planned.
On December 27 the relatives who are the appellees in the case contacted OCS for the first time. The uncle of the child is the mother's older brother. He testified that the family had lost contact with his sister ten years previously and he first became aware of the child's existence in June 1991. The reason he and his wife did not take steps earlier to gain custody of his niece was because they thought his sister was making efforts at reunification with the child and they did not want to interfere. Not until he called OCS on December 27 did he learn that OCS was moving toward freeing the child for adoption. At this time they took steps to gain custody of the child with the result that the child service agency in Pennsylvania conducted an investigation of them; they had several visits with the child in New Orleans in the presence of social workers involved in the case, and they were interviewed by representatives of OCS.
Prior to the hearing of February 24 the court appointed a psychologist to evaluate both the relatives and the foster parent to assist the court with a decision as to the permanent placement of the child. In his report he found that both parties were fully qualified to have the child, but he credited the relatives on the basis that the child in their care would have the benefit of *660 a two parent family and an extended biological family of relatives who reside in the area where the uncle resides. Both OCS and the Court Appointed Special Advocate (CASA) recommended placement with the relatives on the basis of their own observations of the relatives' contacts with the child.
In reasons for judgment the trial court resolved several issues raised by the parties and found that OCS had not been diligent in trying to locate the child's relatives; the blood relatives were not at fault for failing to come forward sooner; the foster parent had not violated her contract by seeking to adopt the child; and the foster parent's dual certification as an adoptive parent overrode any violation of the contract which she may have committed. However, the trial judge considered these issues to be "not paramount" and he considered the principal issue to be which home would serve the best interests of the child. He found that both the relatives and the foster parent would be excellent custodians for the child and he would not award custody to the relatives simply because they are blood relatives of the child. However, he would favor them where all other considerations are equal.
In this court the foster parent's principal argument is that between June 1991 when the child was thirteen months of age and February 1992 when the hearing was held the child had bonded with her to the extent that transfer to the relatives would be detrimental to the child. This is not borne out by the record. The court appointed psychologist specifically addressed this concern and stated that the child had the potential to form a psychologically healthy attachment to the relatives; that a child of this age will become attached to anyone who supplies her basic needs; and there would be no long term psychological consequences to the child if she is moved and placed with the relatives.
The trial judge is vested with great discretion in making a decision of this kind and such a decision will not be reversed on appeal absent a showing of abuse of that discretion. The judge's concern for what was in the child's best interests was the proper standard for his decision. The record amply supports his judgment in this case. All of the professional witnesses involved in the case recommended placement with the relatives and the testimony of the relatives themselves clearly demonstrated their ability to provide a loving, healthy, stable and family oriented environment for the child.
By its appeal OCS raises a number of technical procedural issues with respect to the judgment. It challenges the standing of the foster parent to have intervened in the case at all and to question the judgment in this court. It also faults the trial court for dividing custody between it and the relatives taking the firm position that it is entitled to absolute custody with the sole discretion to decide who is to be the physical custodian of the child.
This case was decided by the Louisiana Children's Code adopted by Act 235 of 1991 and becoming effective on January 1, 1992. Art. 681 provides the court with a number of dispositional alternatives including placement with a public agency, grant of guardianship of the person of the child to any individual, or any "combination of... dispositions as the court deems to be in the best interest of the child." OCS relies upon art. 672(B) which prohibits the court from dividing legal and physical custody of the child when assigning custody to a department. However, this article must be read in context with the statutory scheme of the Code in general and in relation to Art. 681 in particular.
Chapter 13 of the Code, art. 671 et seq., applies to a case when a child in need of care enters the custody of a child care agency and during the development of a case plan. Chapter 14, art. 678 et seq., governs the disposition of the child by the court after adjudication as a child in need of care. Chapter 15, art. 687 et seq., provides the procedure governing case review from the time the child is removed from the parents' care and is placed in the custody of the department until such time as the child achieves permanent placement as defined in art. 603(15). This defines permanent *661 placement to include placement under a guardianship of the person and it defines "person" to include an individual or an agency. Chapter 16, art. 701 et seq., provides the procedure for dispositional reviews as opposed to case reviews.
In this case the trial court made its original dispositional judgment in September 1991. At this time the hearing which resulted in the present appeal was scheduled as a dispositional review hearing in accordance with art. 702. In the meantime a case plan was developed so that the hearing was a simultaneous one to review the case plan and the disposition as authorized by art. 711. Since the hearing was not simply a case review hearing but a dispositional review hearing as well the court was not restricted by art. 672, but had the flexibility provided by art. 681's dispositional alternatives which specifically permit the court to order a combination of placement with an agency and guardianship with an individual.
As to the position of the foster parent in this case, our previous discussion may render the question moot, but it seems clear that the Children's Code recognizes the standing of the foster parent to participate at least to some extent within the sound discretion of the court. In this case the court modified its previous disposition so that the foster parent, if properly considered a "person ... to whom the custody of the child has been assigned", was entitled to notice of the hearing and of the judgment. Arts. 715 and 717. Since this hearing was a case review hearing as well as a dispositional review hearing the foster parent was specifically entitled to notice of the right to appear at the hearing. Art. 695. If these provisions do not authorize the foster parent in this case to participate to the extent that she did, the trial court was vested with the discretion to allow her intervention as an "interested person" Art. 697. In this instance the trial court wisely allowed full participation by the foster parent since she was in a unique position to assist the court in its ultimate and difficult decision as to whose custody would serve the best interest of this child.
Accordingly, the judgment is affirmed.
AFFIRMED.

ON REHEARING GRANTED
On the application of the State of Louisiana, Department of Social Services, Office of Community Services we granted a rehearing limited to the issue of whether the trial court could grant physical custody to the relatives while maintaining a legal custody in OCS.
We adhere to the views we expressed on this issue in our original opinion. In addition we acknowledge the excellent brief filed in behalf of the child on this issue. As she points out, the trial court's award of custody was clearly in the best interest of the child which must be the paramount consideration; and the financial concerns of OCS are not a problem in this case because OCS is not providing financial assistance to the Lobrons.
Our original opinion is reinstated.