619 So.2d 1121 (1993)
STATE of Louisiana in the Interest of Mark John MARTORANA.
No. 92-CA-2776.
Court of Appeal of Louisiana, Fourth Circuit.
May 27, 1993.
Sherry Watters, Bureau of General Counsel, New Orleans, for the State.
*1122 William A. Ransom, III, Ransom, Bann, & Stone, Metairie, for appellees.
Before WARD, ARMSTRONG and PLOTKIN, JJ.
PLOTKIN, Judge.
The issue presented in this appeal is how much in adoption subsidies must the State pay adoptive parents of severely handicapped children. The juvenile court ordered the State to pay $39.14 per day to Mr. and Mrs. Mirek Henski, the adoptive parents of Mark Martorana, the appellees. The State appealed claiming that this amount is excessive and in violation of the law. We reverse and render judgment.

FACTS:
Mark John Martorana was born January 14, 1991 with significant congenital heart defect and cystic fibrosis. Shortly after his birth, he was placed in the custody of the Department of Social Services, Office of Community Services (OCS). Thereafter, Mark's mother surrendered her parental rights.
After his release from the hospital in July of 1991, Mark was placed in a therapeutic foster care home through September, 1991. During this time, OCS was contacted by the Henskis, who were friends of the initial foster parents of Mark. The Henskis indicated that they wished to have Mark placed with them as foster parents. The Henskis completed the necessary training to provide therapeutic foster care and were certified by OCS as foster and adoptive parents. Mark was placed in their home in September of 1991.
As provided by statute, regular review hearings were held concerning Mark on September 16, 1991 and March 23, 1992. At each hearing, the goal of adoption was approved as the permanent case plan for Mark. The Henskis executed an agreement to adopt and Mark was designated a special needs child so that his adoptive parents would be eligible for an adoption subsidy from the State.
At the March 23, 1992 review hearing, the Henskis were allowed to intervene in the proceedings in order to litigate the amount of the adoption subsidy offered to them by OCS. A hearing was set for April, 1992. At the hearing the juvenile court heard evidence concerning the child's placement, condition and needs. In the permanent placement plan the State offered to pay $7.53 a day plus $258 per month as part of the adoption subsidy payment. After receiving memoranda on the alternative calculations of adoption subsidy amounts from the parties, the juvenile court ordered the State to pay the Henskis $39.14 per day as an adoption subsidy. The State appealed.

NO CAUSE OR RIGHT OF ACTION:
In its first assignment of error the State asserts that by seeking an increase in the amount of the adoption subsidy the Henskis are in essence seeking a monetary judgment in their favor. The State argues that, although the Henskis have a right to intervene in the permanent placement hearing, their intervention is limited to placing evidence before the court concerning the permanent placement of the child. We disagree.
La.Ch.C. art. 697(A) states "[f]or good cause shown, the court or administrative review body may allow any interested person, agency or organization to intervene in the case review proceedings to facilitate the permanent placement of the child and to insure that the best interests of the child are protected." This language recognizes the fact that the juvenile court may take evidence relating to the best interest of the child from those parties which have an interest in the child.
The best interest of the child includes the amount of monetary support contributed by the State to sustain a "special needs" child in his adoptive home because the child benefits directly by the amount of the subsidy. In this case the Henskis are an interested party and may intervene to challenge the amount of the subsidy as being insufficient. While an interested person may intervene to challenge the amount of an adoption subsidy, such a challenge should only be sustained when the OCS has abused its discretion in determining the amount of the adoption subsidy as explained *1123 hereinafter. Thus, we turn to the amount of the award in this case.

EXCESSIVENESS OF AWARD:
The legislature enacted La.R.S. 46:1790-1794 to comply with the requirement of Federal provisions that each State maintain an adoption assistance program for "special needs" children. "Special needs" children are those children which "because of physical or mental condition, race, age, membership in a sibling group, or other serious impediments or special needs, is considered a child that is difficult to place for adoption." La.R.S. 46:1790(B)(1). In order to foster the permanent placement of these children and to provide assistance to the adoptive parents, the State has authorized that an adoption subsidy be paid to the adoptive parents of "special needs" children. Mark is unquestionably a "special needs" child and has been so designated by the State for adoption subsidy purposes. The only question remaining is the amount of the subsidy to be paid to the Henskis.
Adoption subsidies are comprised of the following components: 1) Maintenance Subsidy Payments; 2) Special Board Rate; 3) Special Services Subsidy Payment; 4) Non-Recurring Adoption Expenses. The maximum amount of the adoption subsidy is regulated by La.R.S. 46:1791 which provides in pertinent part that "[t]he amount of (adoption subsidy) payments may vary, depending upon the needs of the child and the adoptive parents, tutor, or guardian, but shall not exceed one hundred percent of the costs of providing foster care for the child." While 46:1791 provides for a statutory maximum, it does not provide for a statutory minimum.
The legislature has authorized the Department of Health and Human Resources to create rules which govern the payment of adoption subsidies. La.R.S. 46:1793 provides, in pertinent part, as follows: "[t]he Department of Health and Human Resources may adopt, promulgate, and enforce such rules and regulations as are necessary and appropriate to implement the provisions of this Part." The Department, through OCS, has promulgated the Program Policy Manual which contains specific provisions regulating adoption subsidies. Clearly, the Department's policies must operate within the constraints of the general provisions of 46:1790 et seq.
In the instant case, the OCS has promulgated the Program Policy Manual which governs the adoption subsidy authorized by La.R.S. 46:1790 et seq. Chapter 8 §§ 720 of the Program Policy Manual provides the following:
The amount of the maintenance subsidy payment may vary according to the needs of that particular child at the time of the application for an adoption subsidy. Payment is made up to 80% of the foster care board rate.... The current maximum regular subsidy rates are as follows: 1) Child up to age 5$7.53 per day.
The amount provided as a subsidy does not violate the statutory restrictions of La.R.S. 46:1790 et seq. Thus, OCS has operated within its grant of authority.
OCS justifies its policy determinations and the amount it will pay in adoption subsidies on two grounds. First, the child, once adopted, is the responsibility of the adoptive parents. While the State will assist the parents with the difficulties in raising a "special needs" child, the assistance is only supplemental. The assistance given by the State in the instant case consists of covering 100% of the child's medical bills as well as the adoption subsidy of $7.53 per day plus $258 which represents the Special Board component of the adoption subsidy.
Second, the State points to budgetary constraints which prohibit the State from determining the amount of the adoption subsidy based on the needs of each individual child. The State concedes that the amount paid to the Henskis does not meet all of Mark's needs. However, the policies adopted by the OCS attempt to meet the special needs of all handicapped children to the best of its abilities.
The Henskis argue that the phrase "cost of providing foster care for the child" means the amount paid to provide foster care to the individual child. Because of Mark's "special needs" status the foster *1124 care amount in this case, referred to as therapeutic foster care, was $80.25 a day. Thus, under the Henskis' rationale, the maximum amount the State could pay them is one hundred percent of this amount. Additionally, the Henskis argue that common sense dictates that the adoption subsidy should be tailored to the individual child. They argue that OCS has recognized this by requiring that maximum amount Non-IV-E eligible children may receive is 80% of the "regular" foster care amount whereas as IV-E eligible children may receive 80% of the cost of foster care. The Henskis argue that because Mark is unquestionably a IV-E eligible child and severely disabled, he should be eligible for an amount which addresses his needs more closely. Thus, the trial court's order, which reflects Mark's serious condition, should be affirmed.
The State counters with a three prong argument. First, it notes that the language under consideration, no matter what is meant by "the cost of providing foster care for the child," creates a statutory maximum for the amount of the adoption subsidy. However, no statutory minimum is established. Second, the State notes that La.R.S. 46:1793 grants the OCS the power to establish policies and guidelines concerning adoption subsidies, which it has done. Third, it notes that the policies adopted by the OCS provide that the amount of the adoption subsidy shall not exceed 80% of the "regular foster care board rate." This amount is at present, for a child below the age of five, $7.53 a day. Therefore, because the legislature has authorized OCS to create policies concerning adoption subsidies and OCS has acted within its statutory mandate in setting the amount at the aforementioned level, the trial court is without power to order the State to pay subsidies in excess of this amount. We agree.
The Henskis have not advanced any argument which convinces this court why the policies of the OCS should not be followed in the instant case. The OCS is empowered by the legislature to provide for subsidies at less than the rate of foster care for the child, regardless of whether the "foster care" received by the child was "regular" or "therapeutic." The fact that each subsidy is not determined on a basis of every individual child is unpersuasive. First, the Henskis are receiving reimbursement for 100% of the medical expenses for Mark. Second, as a supplement for their income, the Henskis are receiving the adoption subsidy of $7.53 per day, plus $258 a month for special board. These amounts are determined by balancing the desire to provide assistance for parents of "special needs" children with the realities of budgetary limitations. Although a particular child may have greater needs, the legislature, through the OCS, has not yet determined that a greater subsidy should be available for that child. An increase in the amounts available to children with particularly severe disabilities is better addressed in the legislature and not by the courts of this State. Thus, we find that the OCS has not abused its discretion is determining the amount of the adoption subsidy to be granted in this case.
Accordingly, the judgment of the trial court ordering the State to pay $39.14 per day in adoption subsidies is reversed. The State is ordered to pay as a maintenance subsidy $7.53 per day. Additionally, the State is ordered to pay $258 per month as the special board rate and to reimburse the Henskis for 100% of the associated medical expenses of Mark Martorana which are not covered by Medicaid.