| JONES, Judge.
Appellant, Myron Watkins appeals judgment of the juvenile court dismissing his intervention in the adoption of his half-sister, Deborah,[1] and granting Appellees, Mr. and Mrs. Tyrone Hutton, a final decree of adoption. The court found that there was no evidence proving that the Huttons’ were unfit to serve as adoptive parents, and that to order the Huttons’ to produce Deborah at fixed times and places to visit with Myron would he unreasonable and not in the best interests of Deborah. From this judgment, plaintiff appeals.
On July 2, 1990, Myron Watkins and his infant half-sister, “Deborah,” were placed in the home of Tyrone and Faith Hutton by the Office of Community Services (OCS), after their mother, a paranoid schizophrenic, was found wandering in traffic with Deborah in her arms. At the time Deborah was three months old and Myron was ten. Mrs. Hutton is the children’s maternal aunt.
Rln July of 1993, Myron alleged that he had been physically abused and Deborah had been subjected to corporal punishment by Mr. Hutton. The complaint of physical abuse was investigated by the Office of Community Services’ Child Protection Unit and was found to be invalid. The complaint of corporal punishment of Deborah was found to be valid, but was classified as a child care deficiency rather than as abuse. Myron was thereafter removed from the legal and physical custody of Mr. and Mrs. Hutton and placed in the home of a maternal uncle, Kevin Howard. Deborah has resided continuously with the Huttons since her July 2, 1990, placement. She is now six years old, and Myron is sixteen.
Although OCS’s Child Protection Unit had concluded its investigation, Judge Lagarde ordered psychiatric testing of Deborah on December 14, 1993, as requested by Myron through counsel. Mr. and Mrs. Hutton were not present at the hearing, nor were they represented by counsel. Deborah was subsequently evaluated by a child psychiatrist, Joni L. Orazio, M.D., in March, 1994. Dr. Orazio found that corporal punishment had been used with Deborah, however, she also found that Deborah was a happy and well adjusted child. Dr. Orazio also noted that Myron and Deborah’s relationship should be maintained with regular, frequent visitation, preferably weekly, and that regardless of the placement of the children, it was important for Myron and Debbie to maintain their relationship.
After Myron’s removal from the Hutton’s household, the children visited each other at OCS bi-weekly. The court subsequently ordered weekly visitation.
The children’s Child in Need of Protection case was assigned to Section “D” of Orleans Parish Juvenile Court from July 1990 until *24 April 1994 when Deborah was freed for adoption. Deborah’s ease was thereafter transferred to Section B of Orleans Parish Juvenile Court while Myron’s case remained in Section “D.” Deborah’s OCS case was transferred to adoption worker Deborah Tanner (Tanner) in September, 1994. Tanner initiated contact with the family sometime in hOctober, 1994. At this time, Mrs. Hutton informed Tanner that the weekly visits with her brother was confusing Deborah because he insisted that Deborah refer to Mrs. Hutton as “auntie,” and to her biological mother as “Mama.” By Myron’s own admission he instructed Deborah to call Mrs. Hutton “Auntie” even after Mr. Hutton told him not to do this. Myron’s OCS worker, Karen Pierce, opined that Myron resented Deborah’s bonding to the Huttons because this would mean that Deborah would not see their biological mother as “mama.”
On November 14, 1994, in accordance with Tanner’s recommendation, Section “B” of Juvenile Court ordered that visitation between the siblings cease. On January 19, 1995, several months after Deborah’s case had been transferred to Section “B,” Judge La-garde of Section “D,” ordered a minimum of two hours weekly visitation between the siblings. Neither Deborah nor the Huttons were present or represented at the hearing.
The petition for Deborah’s adoption was filed in May of 1995. The case was subsequently assigned to Section “A” of the Orleans Parish Juvenile Court. In June of 1995, Myron, through his guardian, intervened in the proceeding opposing the adoption, or in the alternative, seeking post-adoption visitation.
In the first assignment of error, appellant argues that the trial court erred when it declined to order sibling visitation even after acknowledging that such a right existed. This argument lacks merit.
The trial court determined that sibling contact is a species of family rights protected by Art. I, Section 5 of the 1974 Louisiana Constitution’s prohibition against unreasonable invasions of privacy and that this right is not destroyed when a court changes the relation from siblings to cousins. However, the court found that ordering the Huttons to produce Deborah at fixed times and places to visit with her brother Myron would be unreasonable and not in Deborah’s best interest. We agree.
|4When a matter concerns the rights of a minor in a juvenile court proceeding, it must be viewed under the codal provisions of the Louisiana Children’s Code. La. Ch. C. art. 103 provides:
Except as otherwise specified in any Title of this Code, the provisions of the Children’s Code shall be applicable in all juvenile court proceedings, and only to such proceedings.
Because Deborah is a minor and is the subject of a juvenile court proceeding, we must consider her relationship to Myron through the codal provisions of the Louisiana Children’s Code.
The record reflects that psychologically, Deborah has recognized the Huttons as her parents for a significant period of time. This parent-child relationship was consummated when Deborah legally became the Huttons’ daughter. The articles of the Children’s Code must be construed to promote the stability of the family. La. Ch. C. art. 102 provides:
The provisions of this Code shall be liberally construed to the end that each child and parent coming within the jurisdiction of the court shall be accorded due process and that each child shall receive, preferably in his own home, the care, guidance, and control that will be conducive to his welfare. In those instances when he is removed from the control of his parents, the court shall secure for him care as nearly as possible equivalent to that which the parents should have given him. These Code provisions shall be construed to promote the stability of the family and to secure simplicity in procedure, fairness in adjudication and administration, and the elimination of unjustifiable delay.
Therefore, for Deborah’s well-being to be maintained, the new relationship between Deborah and the Huttons must be protected. Accordingly, we find that the trial court properly determined that ordering the Hut-tons to produce Deborah at fixed times and *25 places to visit with her brother Myron would be unreasonable and not in Deborah’s best interest.
| sin his second assignment of error, appellant argues that the trial court erred when it failed to consider the expert testimony offered at trial to the effect that post adoption visitation is in the best interest of siblings who have been separated, and in particular, in the best interest of Myron and Deborah. This assignment of error lacks merit.
As stated above, since this was a juvenile court matter, the trial court was bound to apply the provisions of the Louisiana Children’s Code. La. Ch. C. art. 1218(b) provides that post-adoption visitation rights are only available for the grandparents of the adopted child. Thus, while the trial court could consider the expert testimony presented by the appellant, it could not apply the information gained by such testimony since post adoption visitation for siblings is not provided for under the law. We find no error in the trial court’s ruling.
In his third and final assignment of error, appellant argues that the trial court erred when it determined that visitation between Myron and Deborah would disrupt the adoptive relationship. We disagree.
A court of appeal may not set aside a trial court’s or jury’s finding of fact in the absence of “manifest error,” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989). The record reflects that Myron, by his own admission, instructed Deborah to refer to the Huttons as “auntie and uncle” rather than as “mama,” even after he was corrected for doing so. The trial court found that, in the future, this behavior would be disruptive to the Huttons’ authority as Deborah’s parents.' We find no error in the trial court’s findings.
Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.

. The child's full name shall remain anonymous.