hWALTZER, Judge.
In this appeal the natural paternal grandmother of three minor children contests the appointment of E.B., (a cousin of the natural mother of the minor children V.M., K.M. and B.M.), to the position of provisional tutrix in 1997; the cousin’s continued custody of the three children; and finally, their adoption by E.B.

BACKGROUND FACTS AND PROCEDURE

In August 1993, the State of Louisiana, Department of Social Services, Office of Community Services, removed three minor children, V.M., K.M., and B.M., from the custody of their biological mother finding them in need of care. The State placed the children with a maternal cousin, E.B. She qualified to serve as foster mother to the three children and retained custody of them continuously. By judgment dated 28 September 1995, the trial court terminated, without opposition, the parental rights of the biological mother and the alleged biological father. The alleged biological father was killed in an accident on 5 November 1996.[1] The foster mother sought appointment as the provisional tutrix of the three minor children. Additionally, she began adoption proceedings.
After her son’s death, the natural paternal grandmother, M.C., first asked the court to revoke the foster mother’s appointment as provisional tutrix, alleging that provisional tutorship should be awarded by preference to the natural paternal 12grandmother. She further sought custody of the three children and, lastly, requested that she be allowed to intervene in the adoption proceedings filed by the foster mother/provisional tutrix. The numerous actions were consolidated and several hearings were held on the various petitions and motions.
On 27 February 1997 the trial court heard the natural paternal grandmother’s Motion for Revocation of Provisional Tutorship and Appointment of Tutrix and her writ of habe-as corpus/request for custody. The trial court heard from several witnesses, including the foster mother/provisional tutrix, the three children, Debbie Barasich, a social worker employed by the Louisiana Department of Social Services assigned to these children, and the natural paternal grandmother’s daughter (suggested under-tutrix).
On 25 March 1997 the trial court heard the testimony of the natural paternal grandmother, the paternal step-grandfather, and Joe Maggiore, a second employee of the Louisiana Department of Social Services assigned to the children’s cases.
On 29 May 1997 the trial court heard from several witnesses in matters relating to the children’s adoption by the foster mother/provisional tutrix. The natural paternal grandmother and step-grandfather, as well as Joe Maggiore, again testified.
Two judgments are before this Court on appeal: a) the judgment of 28 April 1997, wherein the trial court continued the custody of the three children with the State of Louisiana, Department of Social Services, the children’s placement with the foster mother, and the appointment of the foster mother as provisional tutrix; b) the judgment of 19 June 1997, wherein the trial court denied the natural paternal grandmother’s request to inter *668 vene in the adoption proceeding, which culminated in a judgment of adoption by the foster mother the same day.

\.¿FIRST ASSIGNMENT OF ERROR: The trial court erred in continuing the custody of the three children with the State of Louisiana and placement with the foster mother in April of 1997.

Appellant, the natural paternal grandmother, argues that the trial court erred in its April 1997 judgment by continuing the custody of the three children with the State and placement with a maternal cousin. Specifically, the natural paternal grandmother argues for application of L.S.A.-Ch.C.art. 622.
In 1993, when the children were removed from their biological mother’s custody and adjudicated in need of care, L.S.A.-Ch.C.art 622 provided:
SUBSTITUTE CARE
A child taken into custody as a child in need of care shall be placed only in foster care. The department shall supervise the child’s placement for the duration of the time the department has custody of the child.
In 1997 LSA-Ch.C.art. 622 was amended by Act 1997, No. 1152, See. 1, effective 15 August 1997, and provides in pertinent part:
RULES FOR PLACEMENT
A. (1) General rule. A child who is taken into custody as a child in need of care shall be placed in the home of a suitable relative who is of the age of majority and who is willing to assume such care of the child if such placement is in the best interest of the child. The following are those relatives to whom care of the child may be entrusted and are listed in the order of priority:
(a) Grandparent.
(b) Aunt or uncle.
(c) Sibling.
(d) Cousin.
(emphasis supplied).
We note that the applicability of LSA-Ch.C. art. 622 was not raised at the proceedings below. However, counsel for appellant asserts that the 1997 amendment of LSA-Ch.C.art.622 should be applied retroactively in this case. |4We disagree. LSA-Ch.C.art. 622 was amended effective 15 August 1997, and was not in effect at the time of the pleadings and hearings concerning the placement of the children in the case in 1993. Nor was the amendment in effect in 1995, when parental rights of the biological parents were terminated and custody was continued with the foster mother without objection from anyone. Since the recent amendment to LSA-Ch.C.art.622 does not apply to the instant case the natural paternal grandmother’s argument that she is entitled to custody because she alleges a specific biological relationship to these children, years after the trial court judged them in need of care and decided the appropriate custody arrangement, lacks merit. Accordingly, we affirm the judgment of the trial court continuing the custody of the children with the foster mother.

SECOND ASSIGNMENT OF ERROR: The trial court erred in refusing to revoke the provisional tutorship of the foster mother.

The natural paternal grandmother relies on LSA-C.C.art. 263 (contained in the Civil Code chapter “Of Tutorship by the Effect of Law”), for her assertion that the trial court erred in refusing to revoke the foster mother’s provisional tutorship and to appoint instead the natural paternal grandmother to the position of provisional tutrix. LSA-C.C. art. 263 provides:
Qualified ascendants; collaterals by blood; surviving spouse
When a tutor has not been appointed to the minor by father and mother dying last, or if the tutor thus appointed has not been confirmed or has been excused,' then the judge shall appoint to the tutorship, from among the qualified ascendants in the direct line, collaterals by blood within the third degree and the surviving spouse of the minor’s mother or father dying last, the person whose appointment is in the *669 best interests of the minor, (emphasis supplied)
The grandmother asserts that by the mandatory provisions of this article, preference in tutorship proceedings is given the grandparent over all other ^relatives. In this case, this article does not control the appointment for four reasons. First the article does not give any preference to ascendants. Second, the parental rights of both the biological mother and alleged biological father were terminated by judgment without opposition before the appointment of the foster mother to the position of tutrix. Third, the biological mother of the children is not dead. LSA-C.C.art. 263 is not determinative of this issue and does not mandate the appointment of the natural paternal grandmother. Four, LSA-C.C. art. 263 does not apply to the provisional tutorship judgment. Accordingly, the trial judge did not err when he refused to revoke the appointment of the foster mother to the position of provisional tutrix and denied the grandmother’s request for such appointment.

THIRD ASSIGNMENT OF ERROR: The trial court erred when it denied the grandmother the opportunity to intervene in the adoption by the three children by the foster mother/provisional tutrix.

The natural paternal grandmother petitioned the court to intervene in the agency adoption proceedings. The natural paternal grandmother alleged that the adoption should not be granted. She claimed that the foster mother/tutrix was unfit, only acted out of financial interest and that her planned marriage would make an adoption by her contrary to the best interests of the children. At the intervention hearing the trial court heard from three witnesses about the potential adoption. The record is replete with testimony of the valiant struggle of the potential adoptive mother caring for these emotionally and physically needy children from the time of their abandonment and desertion by their biological parents. Mr. Maggiore, an employee of the Louisiana Department of Social Services, assigned to oversee the children’s adoption, also testified. Mr. Maggiore 1 (¡assured the court that the potential adoptive mother provided a nurturing and safe home for the children. He endorsed the adoption of the children by their caretaker for approximately four years. In his view, the permanency accompanying adoption by the foster mother/tutrix would enrich the lives of the children.
On the other hand, the testimony of the natural paternal grandmother and step-grandfather revealed that over the years they had little contact with the children. Until this litigation, the children had never visited in their home. They also acknowledged that they had never celebrated holidays or birthdays with the children. The natural paternal grandmother further testified that she knew that the children had been taken from their biological mother when her son, the biological father, was imprisoned. The testimony further shows that the natural paternal grandmother made no attempt to locate, contact or help her three grandchildren. Although there was testimony that the grandparents now wish to provide a splendid home in an expensive neighborhood of the city and the step-grandfather would be able to include the children in his golf game, the trial court found that the natural paternal grandmother failed to persuade it that she had “good cause” to intervene in the adoption or that she was a “party in interest”.
While appellant asserts the absence of a proper hearing as required by law and that the natural paternal grandmother had a right to intervene in the agency adoption as a matter of law, LSA-Ch.C.art. 1209 provides:
Intervention
A. Intervention in agency adoption proceedings shall not be allowed except on motion of the court and a showing of good cause.
B. Such intervention shall be limited to persons having a substantial care-taking relationship voith the child for one year or longer, or any other person that the court finds to be a party in interest.
|7C. The intervention of a party in interest shall be for the limited purpose of presenting evidence as to the best interests of the child, (emphasis supplied).
*670 In order to successfully intervene in the agency adoption proceedings, the natural paternal grandmother had the burden to persuade the trial court that she had “good cause” to believe that the adoption was not in the best interests of the children and that she was “a party in interest”. Considering the history of the lack of a relationship with the natural paternal grandmother and her belated interest in these children, the trial court determined that the natural paternal grandmother failed to persuade it that she had “good cause” to intervene in the adoption or that she was “a party in interest”. Moreover, significantly, after hearing the evidence presented at the 29 May 1997 hearing, the trial judge found that the “best interests of these children demand that a permanent placement be made”, allowed the adoption to proceed, and ordered a final decree of adoption in favor of the foster mother/tutrix. Based on this record, the factual findings should not be reversed by an appellate court in the absence of manifest error or abuse of discretion. State In Matter of Adoption of Deborah, 96-2545 (La.App. 4 Cir. 9/18/96); 681 So.2d 22, 25. After a careful review of the entire record, we find no error in the trial court’s conclusions. Accordingly, the judgment of 19 June 1997 is affirmed.

CONCLUSION AND DECREE

The judgments of the trial court refusing to change the custody of the children are affirmed.
We affirm the trial court’s refusal to revoke the provisional tutorship of the foster mother/tutrix.
The judgment of the trial court denying the natural paternal grandmother the opportunity to intervene in the adoption proceedings is also affirmed.
18We likewise affirm the trial court’s final decree of adoption of the three children by the foster mother/tutrix.

AFFIRMED.

. The biological father never formally acknowledged the paternity of the children.