hWALTZER, Judge.
STATEMENT OF THE CASE
The parties have agreed that Anna R. and Anita R. are twins in the foster care custody of the Louisiana Department of Social Services (DSS), living in separate homes. They visit weekly with a sibling who is also in foster care. The twins stopped visitation with two other siblings when those two left State custody. Anna R.’s aunt has agreed to adopt her, and DSS will offer an adoption subsidy. Presently, no one has asked to adopt Anita R.
Counsel for the twins moved for judgment requiring DSS to condition the adoption subsidy contract between DSS and the adopting parent upon the adopting parent’s agreement to post-adoption visitation between the twins. DSS filed an exception of no right of action.
The trial judge upheld the exception and counsel for the twins appealed. Counsel claims that the trial court erred in believing it lacked the power to review the contracting process and by believing the children were parties to the subsidy contract. He contends that the twins have a right of action as fiduciary obligees launder La. Ch.C. arts. 116(12) and 672(A). They seek to enforce a constitutional right to privacy under La. Const. Art. I, § 5 and State in Matter of Adoption of “Deborah”, 95-2545 (La.App. 4 Cir. 9/18/96), 681 So.2d 22. In the alternative, he claims a right of action under La.Ch.C. art. 714(A) to modify the terms of the twins’ disposition, requiring a hearing on the merits pursuant to La. Ch.C. arts. 681(5) and 683(A). Because we find the twins have no right or cause of action in the premises, we affirm the judgment below.
ANALYSIS
The peremptory exception of no right of action questions whether plaintiff *398 has an interest in judicially enforcing the right alleged against the defendant. In considering the exception, the court must decide whether the plaintiff belongs to a particular class for which the law grants a remedy for a particular grievance or whether the plaintiff has an interest in judicially enforcing the right asserted. It raises neither the question of plaintiffs ability to prevail on the merits nor whether defendant may have a valid defense. Wallace C. Drennan, Inc. v. Sewerage & Water Bd. Of New Orleans, 98-2423 (La. App. 4 Cir. 9/22/99), 753 So.2d 861.
The purpose of the peremptory exception of no cause of action, on the other hand, is to determine the sufficiency in law of the petition. It questions whether, accepting all well-pleaded allegations of fact, the petition sufficiently alleges grievances for which the law affords a remedy. Id.; La.C.C.P. art. 931. The |judgment on this exception is reviewed de novo, because the exception raises a legal question. This Court is to determine whether in the light most favorable to plaintiffs, and with every doubt resolved in their behalf, the petition states any valid cause of action for relief. Id.
The subsidy contract in question arises from the State’s compliance with the provisions of the Adoption Assistance and Child Welfare Act, 42 U.S.C. 620, et seq. and 42 U.S.C. 670 et seq. This law was enacted by Congress in 1980 to provide financial assistance to support the adoption of children with special needs. In compliance with the federal act, the Louisiana legislature enacted La.R.S. 46:1790 et seq. The state act authorizes DSS to develop and implement a program for subsidizing special needs children, and allows, but does not require, DSS to make payments to adoptive parents during the child’s minority under certain conditions which the parties to the instant case agree make Anna’s adoption eligible for state financial aid. La.R.S. 46:1794(A) provides that any agreement by DSS to subsidize the adoption of an eligible child, which results in a final decree of adoption by an adoptive parent who is relying on the availability of the subsidy at the time of the final decree, shall constitute a contractual obligation on the part of the state in favor of the adoptive parent to the extent that the adoptive parent remains eligible for the subsidy.
Neither the state nor federal subsidy acts gives the parties (DSS and the adoptive parent) or the twins as third party beneficiaries of the contract, the right to negotiate or impose any conditions other than those specifically provided by the | ¿acts, that is, defined levels of monetary support and reimbursement of certain additional expenses occasioned by the child’s special needs. As an adoptive parent, Anna’s adoptive mother will have the right to determine the nature and extent of sibling visitation. There is nothing in the legislative history of either the state or federal act implying an intention to allow any entity to use the subsidy contract as a means of imposing additional conditions on the child’s adoption and adoptive relationship. There is nothing in the law to indicate that an adoptive parent’s rights in a subsidized adoption are greater or less than in a non-subsidized adoption.
The subsidy contract is designed to protect the adoptive parent and is enforceable only by that parent. The federal and state statutes do not create a state or federal private right of action for adoptive children, nor do they give children the right to intervene in the confection of the subsidy contract.
La.R.S. 46:1793 authorizes DSS to adopt, promulgate, and enforce such rules and regulations as are necessary and appropriate to implement the new subsidy law. This Court held in State in the Interest of Martorana, 619 So.2d 1121, 1123 (La.App. 4 Cir.1993) that so long as the amount of subsidy set by the DSS is within the statutory restrictions of La.R.S. 46:1790 et seq., the trial court may not disturb the DSS allocation. The specifics of the subsidy contract, therefor, are not *399 subject to review by the court absent a showing of deviation from the standard set forth in the enabling legislation. Counsel for the twins does not suggest that DSS has so deviated.
|fiCounsel for the twins contends that they have a right to bring suit on a constitutional cause of action for deprivation of their privacy right, relying on the following excerpt from the opinion in Deborah:
The trial court determined that sibling contact is a species of family rights protected by Art. I, Section 5 of the 1974 Louisiana Constitution’s prohibition against unreasonable invasions of privacy and that this right is not destroyed when a court changes the relation from siblings to cousins. State in the Matter of the Adoption of “Deborah”, supra, p. 3, 681 So.2d at 24.
However, the context shows that while this was a conclusion of the trial court, on appeal we agreed that ordering the adoptive parents to produce the adopted child for sibling visitation would be unreasonable and not in the child’s best interest.
This state has determined that a child’s interests are best served by making the stability of the family of paramount importance. La.Ch.C. art. 102 provides that the Children’s Code should be liberally construed to the end that each child and parent coming within the court’s jurisdiction is accorded due process and that the child shall receive such care, guidance and control as will be conducive to his welfare. The article mandates that the Code shall be construed to promote the stability of the family, secure simplicity in procedure, fairness in adjudication and administration and elimination of unjustifiable delay.
This deference to family stability protects the adoptive family. We held in State in the Matter of “Deborah”, supra, pp. 4-5, 681 So.2d at 24-25, that La.Ch.C. art. 102 protects the adoptive family, and that for the child’s well-being to be maintained, the new adoptive relationship must be protected. Accordingly, ordering the adoptive parents to produce the child for visitation with her natural brother would be unreasonable and not in Deborah’s best interest.
| sin that case, this Court considered and rejected the argument that the trial court erred in failing to consider expert testimony that in this case it was in the child’s best interest to participate in post-adoption sibling visitation. We held that the juvenile court was bound to apply La. Ch.C. art. 1218(b), providing that post-adoption visitation rights are available only for the grandparents of the adopted child, and that post-adoption visitation for siblings is not provided by the law.
Because there is no legal provision for post-adoption sibling visitation, the twins in the instant case have no cause of action to require such visitation vel non or as a condition in Anna’s adoptive mother’s subsidy contract. There is no legal basis for treating the adoptive parent’s authority as somehow less than that of a natural parent.
In State in Interest of Latoya W., 97-0695, p. 13-14 (La.App. 4 Cir. 2/4/98), 706 So.2d 688, 694, this Court reversed that part of the lower court judgment imposing as a condition of adoption that four siblings be adopted jointly. We held that the juvenile court was without legal authority to require that four siblings be adopted together and that they and another sibling have reciprocal visitation rights. La.Ch.C. art. 1038 establishes that a final judgment terminating parental rights divests members of the former family of all their legal rights with regard to one another. The effects of a judgment of termination pursuant to this article are the same as those of an adoption decree under La.C.C. art. 214. See, 1991 Official Comment to La.Ch.C. art. 1038. La. C.C. art. 214 provides in pertinent part that upon adoption:
The blood parent or parents and all other blood relatives of the adopted person, except as provided by Ch.C. Article 1264 [relating solely to grandparents], *400 are relieved of all of their legal duties and divested of all |7their legal rights with regard to the adopted person, ....
This Court held further that La.Ch.C art. 1037.1, which allows for continued contact among biological relatives subsequent to a termination of parental rights judgment does not provide for continued contact after adoption. Thus, it is clear that the applicable legislation provides a right and cause of action for visitation after adoption only to the natural grandparents.
The trial court in the instant case therefor correctly refused to entertain counsel’s request that a visitation -requirement be imposed through the agency of the adoptive mother’s subsidy contract. As we held in Latoya W., supra p. 15, 706 So.2d at 695:
The trial court’s attempt to impose some semblance of stability in their [the children’s] lives by placing conditions on their adoption is understandable and commendable. However, Louisiana law does not allow for the impositions of such conditions on adoptions.... [Cjontact must cease upon placement for adoption.
Counsel’s argument that the state has a fiduciary duty to the twins to require post-adoption visitation by means of the subsidy contract is likewise without merit. The fiduciary duty DSS owes to the twins is defined by La.Ch.C. arts. 116(12) and 672(A). Article 116(12) defines legal custody as, inter alia, the right and duty to protect, train and discipline the child, subject to any residual parental rights, which are not at issue in the instant case. Article 672(A) provides that when DSS is assigned custody of a child who has been adjudicated to be in need of care, such as the twins, DSS has sole authority over the placement of such a child within its resources and sole authority over the allocation of other available resources within DSS for children judicially committed to the department’s custody.
IsCounsel for the twins does not point out and we find no authority for creating a right and cause of action based on those articles to review the subsidy contract negotiation process. Absent any legal basis for allowing the subsidy contract to address visitation issues, there is no foundation for such a right or cause of action. We find no legal support for counsel’s argument that Anna’s and Anita’s status as twins is somehow “unique” and would give them a right to attack the contract as not in their best interests under La.Ch.C. art. 714(A). That article refers to the motion to modify a judgment of disposition, not to either a judgment of adoption or a non-judicial subsidy contract.
CONCLUSION AND DECREE.
For the foregoing reasons, we affirm the judgment of the juvenile court. Costs of this appeal are assessed against appellants.
AFFIRMED.