| STATE OF LOUISIANA IN | * | NO. 2023-CA-0744 |
| THE INTEREST OF G. & B. K. | | |
| | * | |
| | | COURT OF APPEAL |
| | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

CONSOLIDATED WITH:                CONSOLIDATED WITH:

STATE OF LOUISIANA IN THE                NO. 2023-CA-0745
INTEREST OF THE MINOR CHILD
J.K., JR.


APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 23-321-J, DIVISION "A"
Honorable William M. McGoey, Judge
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*

(Court composed of Judge Joy Cossich Lobrano, Judge Tiffany Gautier Chase,
Judge Karen K. Herman)


Jane Hogan
ATTORNEY AT LAW
310 North Cherry Street
Hammond, LA 70401

    COUNSEL FOR APPELLANTS/A.S. AND J.K.


Katherine M. Dowling
STATE OF LOUISIANA
Department of Children and Family Services
1450 Poydras Street, Suite 1600
New Orleans, LA 70112

    COUNSEL FOR APPELLEE/STATE OF LOUISIANA


Mary M. McMillan
SOUTHEAST LOUISIANA LEGAL SERVICES

1340 Poydras Street, Suite 600
New Orleans, LA 70112

COUNSEL FOR APPELLEE/J.K., JR.

**AFFIRMED**

**FEBRUARY 23, 2024**

Appellants, A.S. and J.K., seek review of the juvenile court's judgment denying their motion to order the Department of Children and Family Services ("DCFS") to change the placement of their minor son, J.K., Jr., to place him with relatives they have chosen or, in the alternative, to modify its previous custody disposition to remove custody from DCFS and place it with A.S. and J.K.'s chosen relatives. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On January 30, 2023, DCFS received a report that A.S. and J.K. (collectively, "Parents") brought their two-year-old son, J.K., Jr., to Children's Hospital for "seizure-like activity." It was reported that J.K., Jr. stopped breathing and had to intubated. While at the hospital, J.K., Jr.'s urine tested positive for cocaine. On February 2, 2023, the juvenile court issued an emergency instanter order, removing J.K., Jr. from Parents' custody and granting provisional custody to DCFS.[1] Before DCFS personnel arrived at the hospital to take physical custody of J.K., Jr., and before he was discharged from the hospital, Parents removed J.K., Jr.

---

[1] The juvenile court issued an oral instanter order on February 2, 2023, and upon presentment of a supporting affidavit, issued a written instanter order on February 3, 2023.

1

from the hospital and subsequently went to Mississippi. Their whereabouts were unknown for two months.

A continued custody hearing was conducted on February 7, 2023, at which time the juvenile court granted continued custody to DCFS. On March 2, 2023, the State of Louisiana, through the St. Bernard Parish District Attorney's Office, filed a petition requesting that J.K., Jr. be adjudicated a child in need of care as to both parents.

On April 4, 2023, Parents were arrested in Mississippi for kidnapping and obstruction of justice, and J.K., Jr. was taken into custody. DCFS placed J.K., Jr. in the certified foster home of L.R. and J.S. ("Foster Parents"), who had adopted J.K., Jr.'s older, biological siblings, G.K. and B.K.

On April 12, 2023, an adjudication and disposition hearing was held. Parents, who appeared via Zoom from the St. Bernard Parish jail, both stipulated that J.K., Jr. was a child in need of care. The court adopted the case plan prepared by DCFS as an order of the court and set the matter for an initial review hearing. An initial review hearing was conducted on June 7, 2023. At the conclusion of the review hearing, the court found that the child's placement was the least restrictive and most appropriate under the circumstances.

On July 7, 2023, DCFS filed a motion for a judicial determination that reasonable efforts to reunify were not required pursuant to La. Ch.C. art. 672.1, on the basis that the parental rights of Parents to J.K., Jr.'s two older siblings had previously been terminated involuntarily in February 2017.[2] The matter was heard

---

[2] La. Ch.C. art. 672.1 provides as follows:

> A. At any time in a child in need of care proceeding when a child is in the custody of the department, the department may file a

on August 23, 2023. At the conclusion of the hearing, the court granted DCFS's

motion. A judgment to this effect was signed on September 27, 2023.

On September 13, 2023, Parents filed a "Joint Motion for Review/Status

Hearing to Consider DCFS[']s Statutory Duty to Seek Out and Consider Relative

Placement," wherein they alleged that DCFS "has refused to consider . . . relative

placement in violation of its statutory duty." The motion requested that "J.K., Jr.,

be placed in the custody of his family relatives [E.S. and D.S.]; or, in the

alternative[] that placement of the minor be set with his family relatives [E.S. and

D.S.]." The matter was taken up by the court on September 27, 2023. At the outset

of the hearing, A.S.'s attorney moved to "modify [the motion] as a joint motion to

motion for a judicial determination that efforts to reunify the parent and child are not required.

B. The department shall have the burden of demonstrating by clear and convincing evidence that reunification efforts are not required, considering the health, welfare, and safety of the child and the child's need for permanency.

C. Efforts to reunify the parent and child are not required if a court of competent jurisdiction has determined that:

(1) The parent has subjected the child to egregious conduct or conditions, including but not limited to any of the grounds for certification for adoption pursuant to Article 1015.

(2) The parent has committed murder or manslaughter of another child of the parent or any other child or has aided or abetted, attempted, conspired, or solicited to commit such a murder or manslaughter.

(3) The parent has committed a felony that results in serious bodily injury to the child or another child of the parent or any other child.

(4) The parental rights of the parent to a sibling have been terminated involuntarily.

D. If the court determines that reunification efforts are not required, it shall document that determination by written findings of fact. A permanency hearing, which considers in-state and out-of-state permanent placement options for the child, may be conducted immediately and shall be conducted within thirty days after the determination.

3

modify adjudication and disposition requesting that custody from the State be revoked and that custody be placed with a relative placement."

Parents called D.S. as their sole witness at the hearing. D.S. testified that E.S.'s grandmother and A.S.'s grandmother are cousins. She stated that she was "pretty familiar" with J.K., Jr., having seen him at birthday parties "three of four different times." D.S. first became aware of "th[e] matter involving [J.K., Jr.]" in early February 2023, and she and E.S. immediately reached out to St. Bernard Parish Sheriff's Office Lieutenant Garafalo to point them in the right direction as to how to "get[] [J.K., Jr.] once he was found" because they wanted to care for him. She called the main number of the St. Bernard Parish DCFS office from mid-February to April of 2023 but was advised that DCFS could not speak with her.

In early June of 2023, D.S. and E.S. (collectively, "Relatives") were provided contact information for the DCFS case workers assigned to the case. They promptly contacted case worker Ankaya Cola ("Ms. Cola") and told her that they were interested in caring for J.K., Jr. Ms. Cola told them that they needed to have the swimming pool on their property fenced in before DCFS would certify their home to foster the child. D.S. admitted that the pool remained unfenced.

The State called Ms. Cola to testify at the hearing. Ms. Cola testified that she and her supervisor met with Parents in jail on April 19, 2023. During the meeting, Parents provided the names of relatives to consider for placement; the names of relatives provided did not include Relatives. J.K. mentioned Relatives as prospective caregivers but described them as "family friends." Ms. Cola stated that she was advised by her superiors not to contact the named relatives out of concern that the relatives may have assisted Parents during the two-month time period they were sought by law enforcement. Ms. Cola was contacted by Relatives in the first

4

week of June 2023, and after a fingerprint background check was completed, she visited their home on June 27, 2023.

Ms. Cola explained that although Foster Parents are not related to J.K., Jr., DCFS considers placement in a home where the child's siblings are living to be placement with relatives, and that since J.K., Jr. was currently living with his siblings in a certified foster home, DCFS had no reason to pursue other prospective placements for him. Ms. Cola stated that she did not have any concerns about where the child was currently placed, adding that "[h]e is actually doing very well" and is enjoying the company of his siblings.

On cross-examination by counsel for J.K., Jr., Ms. Cola confirmed that before DCFS would consider moving J.K., Jr. to another placement, the agency would require a caregiver assessment to determine which caregiver would be in the child's best interest. Before Relatives could undergo a caregiver assessment, they would have to have their home certified by DCFS for foster placement. The home could not be certified at that time because there was a swimming pool on the property, which Relatives refused to fence in.

At the conclusion of the September 27, 2023 hearing, the juvenile court denied the motion to place custody with Relatives and refused to modify its prior custody disposition.[3] The court signed a judgment in accordance with its ruling on October 11, 2023. Parents appealed.[4]

---

[3] DCFS filed a petition to terminate Parents' parental rights on September 22, 2023. According to the briefs filed by the parties in this appeal, the matter was heard on November 29, 2023, and, as of the filing of briefs, remained pending.

[4] We note that the motion for appeal was filed on October 5, 2023, before the signing of the judgment, and references the trial court's oral ruling from the hearing on September 27, 2023. Although the motion for appeal was filed before the judgment was signed by the trial court, any previously existing defect arising from a premature motion for appeal is cured once the final judgment has been signed. *Overmier v. Traylor*, 475 So.2d 1094, 1094-95 (La. 1985); *see also*

## ASSIGNMENT OF ERROR

Appellants assert the following sole assignment of error on appeal:

> The juvenile court manifestly erred when it denied the motion to grant custody or modify disposition because: (i) the Children's Code clearly prefers relative placement; (ii) DCFS had an obligation to explore immediate placement with [Relatives] and repeatedly failed to do so; and (iii) the court's ruling was not supported by any specific finding that continuing J.K.[, Jr.] in the home of a nonrelative was in his best interest.

## STANDARD OF REVIEW

In *State in the Interest of D.S.*, 04-0327 (La. App. 4 Cir. 7/28/04), 881 So.2d 764, a case involving Child in Need of Care proceedings, this Court set forth the standard of review for juvenile court adjudications as follows:

> The trial judge is vested with great discretion and such a decision will not be reversed on appeal absent a showing of abuse of that discretion. *State of Louisiana in the Interest of M.L.*, 611 So.2d 658, 660 (La.App. 4 Cir.1992). It is well settled that an appellate court cannot set aside a juvenile court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. *State in the Interest of S.M.W.*, 2000-3277, p. 14 (La.2/21/01), 781 So.2d 1223, 1233, *citing In re A.J.F.*, 2000-0948 (La.6/30/00), 764 So.2d 47. In its manifest error review, it is important that the appellate court not substitute its opinion when it is the juvenile court judge who is in the unique position to see and hear the witnesses as they testify. *Id.*

*Id.*, p. 3, 881 So.2d at 766.

## LAW AND ANALYSIS

We find that the juvenile court properly refused to issue the following orders: (1) an order requiring DCFS to change placement of the child from Foster Parents to Relatives under La. Ch.C. art. 672(A); (2) an order to require DCFS to

---

*Radhi v. Nguyen*, 22-01203, p. 1 (La. 8/15/22), 344 So.3d 62, 62, *reh'g denied*, 22-01203 (La. 8/19/22), 344 So.3d 650. Thus, this appeal is properly before us.

choose a more suitable placement under La. Ch.C. art. 672(A); and (3) an order to modify the court's previous custody disposition to remove custody from DCFS and place it with Relatives under La. Ch.C. art. 714(A).

First, we find that the juvenile court had no authority to order placement of J.K., Jr. with relatives chosen by Parents.

La. Ch.C. art. 672(A) provides as follows:

> A. (1) Whenever custody of a child is assigned to the Department of Children and Family Services, the child shall be assigned to the custody of the department rather than to a particular placement setting. The department shall have authority over the placement within its resources and the allocation of other available resources within the department for children judicially committed to its custody.
>
> (2) Upon motion of the court, for good cause shown, a contradictory hearing shall be held and thereafter, the presiding judge shall have the authority to disapprove a placement chosen by the department if it is not in the best interest of the child and shall issue a written order that the department choose a more suitable placement with reasons supporting the court's decision.

"[A]n assignment of legal custody to the department, regardless of the stage of the proceedings, confers the exclusive authority of the department to determine a particular placement of a child." La. Ch.C. art. 672, Official Comments, 2001.

In *State in the Interest of L.C.B.*, 01-2441, p. 10 (La. 1/15/02), 805 So.2d 159, 164, the Supreme Court held that "pursuant to Article 672(A), the Department has the sole authority to determine the specific placements of children committed to its custody." Further the Court held that the juvenile court has "the ultimate authority over a child's placement and may approve or reject a case plan submitted by the Department, but it may not revise the plan or make any particular placements itself." *Id.*, 01-2441, p. 11, 805 So.2d at 165. The Court reiterated this

7

principle in *State in the Interest of R.A.*, 06-2380, p. 3 (La. 12/15/06), 944 So.2d 1262, 1263: "The Department has the sole authority to determine the particular placement setting for the child. The court may only accept or reject and order revision of the case plan; it may not order specific placements."

Here, through their joint motion, Parents requested that J.K., Jr. be placed with Relatives. Since DCFS was assigned custody of J.K., Jr., the juvenile court had no authority to order a specific placement for the child. The court only had authority under La. Ch.C. art. 672(A) to reject the placement chosen by DCFS and order that DCFS choose a more suitable placement if the court found that the placement was not in the child's best interest. *See* La. Ch.C. art. 672(A)(2); *see also State in the Interest of C.T.*, unpub., 21-639, p. 2 (La. App. 5 Cir. 11/10/21), 2021 WL 5869135, *1.

Accordingly, the juvenile court had no authority to order placement of J.K., Jr. with relatives chosen by Parents. For this reason, the juvenile court did not err in denying Parents' request to change the placement of their minor son to place him with Relatives.

Next, the juvenile court also was correct in refusing to issue orders to require DCFS to choose a more suitable placement under La. Ch.C. art. 672(A) and to modify its previous custody disposition to remove custody from DCFS and place it with Relatives under La. Ch.C. art. 714(A). Both statutes require Parents to produce evidence that DCFS's current placement of the child and/or DCFS's custody of the child are not in the best interest of the child. *State in the Interest of A.R.*, 99-3228, p. 8 (La. App. 4 Cir. 5/24/00), 765 So.2d 395, 400; *State in the Interest of C.T.*, unpub., 21-639, p. 2 (La. App. 5 Cir. 11/10/21), 2021 WL 5869135, *1; *see also* La. Ch.C. arts. 601 and 672(A). We find that Parents failed

to meet their burden of proof under La. Ch.C. art. 672(A)[5] and under La. Ch.C. art. 714(A).[6]

A court may "issue a written order that the department choose a more suitable placement" under La. Ch.C. art. 672(A) if the court finds that the placement chosen by the department is not in the best interest of the child. La. Ch. C. art. 672(A)(2). A court may modify a judgment of disposition under La. Ch.C. art. 714(A) if the court finds that the conditions and circumstances justify the modification. La. Ch. C. art. 716. In *State in the Interest of Sapia,* 397 So.2d 469, 473 (La. 1981), the Supreme Court held that "[i]f the court determines [a] child [assigned to the custody of the Department of Health and Human Resources] is not being properly cared for[,] it may remove custody from the Department and place it elsewhere." *See also State in the Interest of CH*, 599 So.2d 850, 852 n. 4 (La. App. 1st Cir. 1992).

J.K., Jr. has been living with his siblings, G.K. and B.K., in the home of Foster Parents, which the juvenile court found to be the least restrictive and most appropriate setting. G.K. and B.K. will remain in the home since they have been adopted by Foster Parents. According to the case worker, J.K., Jr. is thriving in his current placement and is interacting well with his siblings. No evidence was presented that the child is not being properly cared for.

---

[5] The burden of proving justification for rejection of a particular placement of a child is on the party who seeks rejection of the placement. La. Ch.C. art. 672(A)(2) ("Upon motion of the court, for good cause shown, a contradictory hearing shall be held and thereafter, the presiding judge shall have the authority to disapprove a placement chosen by the department . . .").

[6] "The burden of proving justification for modification of a custody disposition of a child earlier found in need of care is on the party who seeks to modify the disposition of custody." *State in the Interest of H.B.*, 99-565, p. 6 (La. App. 3 Cir. 10/13/99), 747 So.2d 144, 147 (quotation omitted).

Accordingly, Parents did not meet their burden of proof necessary to justify modification of the custody disposition under La. Ch.C. art. 714(A) or to require DCFS to choose a more suitable placement under La. Ch.C. art. 672(A).

## CONCLUSION

For the reasons set forth in this opinion, we affirm the judgment of the juvenile court.

**AFFIRMED**