hWALTZER, Judge.
The mother of four children found in need of care and placed with a qualified foster parent appeals the judgment of the trial court. The trial court granted the state’s motion to remove these children from the mother’s custody and place them in foster care after the mother’s live in boyfriend beat, with the mother’s knowledge, the youngest child to death.
STATEMENT OF FACTS AND HISTORY OF THE CASE
On 16 October 1998, R.C., the two year old and youngest child of P.C., was brought to the hospital after emergency help was summoned through 911 operators. She subsequently died of severe injuries. Upon arrival at the hospital, she was diagnosed with a skull fracture and other injuries which appeared to be the result of a severe beating. The Office of Community Services was called. P.C. has four older children. These children remained with their mother until 14 January 2000. The four children were placed together in the home of a certified foster parent. After several hearings the trial court found the four children in need of care and ordered that OCS/DSS retain custody and that the children remain with the foster parent. The mother appeals this finding and the trial court’s judgment, dated 28 March 2000.
12After an autopsy, the coroner determined that R.C. died from battered child syndrome. He testified that she had suffered a skull fracture, six separate areas of hemorrhage on the scalp, five separate root fractures to the back portion of the left and right sides (rib fractures), retinal hemorrhage, extensive hemorrhage in both buttocks, old hemorrhage in the lower back, multiple abrasions and bruises of the back, the buttocks and the legs, and massive bruising to the groin area. The coroner, Dr. Michael B. Defatta, testified that R.C. suffered these extensive injuries over a significant period of time, that the injuries were in various stages of healing, that the skull fracture alone had been inflicted days, perhaps a week, before R.C. died. He also testified that he believed these injuries were clearly noticeable by anyone caring for the child, that the child suffered extreme pain and discomfort before her death, that R.C. would have suffered obvious symptoms, including loss of consciousness and trouble breathing. Dr. Defatta believed that the injuries clearly resulted from someone beating the child severely for a long period of time.
The mother, P.C., and her boyfriend, W.W., who lived with P.C. and her children at the time of R.C.’s death, were charged in the death of R.C. Eventually, P.C. pled guilty to a charge of cruelty to a juvenile and agreed to testify against W.W.[1] She was placed on probation in connection with this plea.
Various witnesses testified that P.C. stated that she knew W.W. beat her children, that she knew R.C. had lost consciousness days before her death, that she knew the child was having trouble breathing days before her death, and that she had not sought medical attention for her obviously injured child. Moreover, these | awitnesses testified that P.C. continued to *964 leave her small children with W.W., although she knew he beat her children.
P.C. suffers from battered women’s syndrome, according to the testimony of her therapist. She has been in numerous abusive relationships, including her relationship with W.W. Her therapist testified that P.C. has a hard time standing up to the abusive men in her life to defend herself or her children. Witnesses testified that P.C., after R.C.’s death, allowed a man, with an extensive criminal history, close and unsupervised contact with her children.
P.C. appeals the judgment of the trial court finding her children in need of care and placing the children in the custody of a foster parent. She argues that the trial court erred in finding the children in need of care and continuing their placement with a certified foster parent, that the trial court erroneously excluded certain evidence, and that the trial court erred by denying her motion for indigent status, motion to continue, and motion for subpoena duces tecum.
ASSIGNMENT OF ERROR NO. 1: The trial court erred by finding that the four children were in need of care and placing them with a foster parent.
The trial court found that P.C. knew that R.C. and the other children were in serious danger but failed to protect her children from serious abuse. The court found that P.C. suffered from denial and battered woman’s syndrome, that she had past relationships with abusive men, and that she showed little improvement in either her choices with regard to her children or the men in her life. The trial court found these conditions constituted a significant risk to the children’s safety. Moreover, the trial court found that the needs of the children would be served best by a foster parent at this time. We find nothing in the record from which to conclude that the trial court erred.
| ¿The trial court’s determination in a child custody case is entitled to great deference. The trial court’s decision will not be reversed on review except in the clearest case of abuse of the trial court’s great discretion. State of Louisiana in the Interest of M.L., 611 So.2d 658, 660 (La.App. 4 Cir. 9/27/92). Clanton does not argue that the trial court misapplied the law. She argues that the state did not prove the case with sufficient evidence.
LSA-Ch.C. art. 602 provides that for the trial court to find that the children were “in need of care,” the children were the victims of “abuse” or “neglect.” These conditions must be proven by a preponderance of the evidence. LSA-Ch.C. art. 665.
From the record, we cannot conclude that the mother actually beat R.C. before her death. However, that determination is not necessary to affirm the trial court’s finding that the four children are in need of care. P.C. admitted that she knew W.W. abused her children, but she repeatedly allowed this man control over R.C., a defenseless child, and the four older children. She continued to protect him after R.C. died. Moreover, P.C. knew that R.C. had suffered serious injury, but she never sought medical attention for the child. P.C. had three prior OCS referrals, two for abuse by her boyfriends and one for neglect. We do not believe that the trial court erred in finding P.C.’s children in need of care.
P.C. argues that the trial court erred in its disposition of the matter by finding that the needs of the children would be best served by continuing their placement with the qualified foster parent. LSA-Ch.C. art 681 provides, in pertinent part:
A. In a case in which a child has been adjudicated to be in need of care, the child’s health and safety shall be the paramount concern, and the court may:
| fi(l) Place the child in the custody of a parent or such other suitable person on such terms and conditions as deemed in the best interest of the child including but not limited to the issuance of a protective order pursuant to Article 618.
*965 (2) Place the child in the custody of a private or public institution or agency.
(3) Commit a child found to be mentally ill to a public or private mental institution or institution for the mentally ill.
(4) Grant guardianship of the child to any individual.
(5) Make such other disposition or combination of the above dispositions as the court deems to be in the best interest of the child.
LSA-Ch.C. art. 681.
P.C. argues that the trial court erred by continuing placement of the children with the foster parent. She complains that the trial court did not place the children with her with conditions and, alternatively, that the trial court did not place the children with her mother. Nothing in the record persuades us that the trial court erred by finding that the safety of the children was best served with their continued placement with the foster parent.
ASSIGNMENT OF ERROR No. 2: The trial court erred by refusing to admit certain statements, constituting hearsay.
P.C. argues that the trial court erred by refusing to admit statements made by the assistant district attorneys during the prosecution of W.W. Essentially, she argues that these statements prove that the state believed W.W., acting alone, was responsible for R.C.’s death. Because we find nothing in the record from which to conclude that the state in this civil proceeding intended to prove otherwise, we see no reason to consider P.C.’s arguments. In this proceeding, the state did not argue that P.C. beat R.C. to death. However, the state has proven with sufficient evidence that P.C. both neglected R.C.’s medical needs and allowed her children repeatedly to be subjected to serious danger. Moreover, P.C. introduced the testimony of one Assistant District Attorney concerning the prosecution of W.W. 1 ¡Assuming the other statements could be introduced under an exception to the rule against hearsay, we are not persuaded that the trial court erred by refusing to admit this cumulative, and irrelevant, evidence.
P.C. argues that the trial court erred by refusing to admit evidence of various letters written to employees of the state assigned to the children’s case. Clearly, the letters to the state employees constituted inadmissible hearsay. P.C. had the burden of establishing their admissibility. P.C. argues that the letters are business records, admissible under LSA-C.E. art. 803(6). LSA-C.E. art. 803(6) specifically provides, in pertinent part:
A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, or record, or data compilation, all as shown by the testimony of the custodian or other qualified witness.
P.C. failed to offer any testimony of the applicability of this exception. She attempted to admit these letters- with the testimony of the recipients. The “custodian or other qualified witness” must have personal knowledge of the record-keeping activities of the business that generates the reports, not the record-keeping practices of the party receiving the reports. We do not find that the trial court erred in refusing to admit this evidence.
ASSIGNMENT OF ERROR NUMBER 3: The trial court erred by denying P.C.’s motion to proceed in forma pau-peris.
P.C. argues that the trial court erred by denying her motion for indigent status, thus making it impossible for her to hire an expert to challenge the extent of *966 R.C.’s injuries. The trial court denied the ex parte motion, since it failed to comply |7with the requirements of LSA-C.C.P. art. 5183. Article 5183 provides, in pertinent part:
Affidavits of poverty; documentation; order
A. A person who wishes to exercise the privilege granted in this Chapter shall apply to the court for permission to do so in his first pleading, or in an ex parte written motion if requested later, to which he shall annex;
(1) His affidavit that he is unable to pay the costs of court in advance, or as they accrue, or to furnish security therefor, because of his poverty and lack of means, accompanied by any supporting documentation; and
(2) The affidavit of a third person other than his attorney that he knows the applicant, knows his financial condition, and believes that he is unable to pay the costs of court in advance, or as they accrue, or to furnish security therefor.
Both on appeal and at the trial court, P.C. conceded that she did not comply with the requirements of LSA-C.C.P. art. 5183. Moreover, we fail to see how an examination of the extent of R.C.’s injuries affects the result in this case. P.C. admitted to several witnesses that she knew W.W. was violent, that she left her children in his custody, and that she never sought medical attention for R.C., although she knew the child was seriously ill or injured. We do not find that the trial court abused its discretion in denying P.C.’s motion for indigent status.
ASSIGNMENT OF ERROR NUMBER 4: The trial court erred when it denied P.C.’s motion for a continuance and motion for subpoena duces tecum.
P.C. argues that the trial court erred in denying her motion for a continuance after the state amended the petition and her motion for subpoena duces tecum ordering the state to produce or copy its file. P.C. argues that the trial court erred by refusing to continue the 28 February 2000 hearing after the state amended its petition on 16 February 2000. Because we do not believe the state’s amendment 18constituted a change in the substance of the allegations, we do not believe the trial court abused its discretion in denying the motion to continue the hearing.
P.C. argues that the trial court erred by refusing to order the state to produce the children’s records in court on the day of the hearing. P.C.’s attorney was permitted to review the records before trial of the matter. Moreover, P.C. does not argue that she suffered any harm by the trial court’s refusal to issue the subpoena. We do not believe that the trial court erred by refusing the request.
AFFIRMED.

. W.W. was tried and acquitted of all charges arising from R.C.’s death.