974 So.2d 143 (2008)
STATE of Louisiana IN the INTEREST OF C.N., Plaintiff-Appellee
v.
Angela Noble HARTE, Defendant-Appellant.
No. 42,977-JAC.
Court of Appeal of Louisiana, Second Circuit.
January 9, 2008.
Donald Weathersby, II, for Plaintiff-Appellee, C.N.
Lunn, Irion, Salley, Carlisle & Gardner, by Karen E. Stubbs, Shreveport, for State of Louisiana, Dept. of Social Services.
Ross E. Shacklette, Bossier City, for Defendant-Appellant, Angela Noble Harte.
J. Bradley Smitherman, for Defendant-Appellee, Ryan Hawkinberry.
Before DREW, MOORE and LOLLEY, JJ.
LOLLEY, J.
"The mother, Angela Noble Harte, appeals a judgment from the Bossier City Court, Parish of Bossier, State of Louisiana, which granted guardianship of her son, C.N., to Michelle Snyder. For the following reasons, we affirm.

FACTS
On May 22, 2005, C.N. came into the care, custody and control of the State of Louisiana, Department of Social Services, Office of Community Services, Bossier Parish ("OCS") after allegations that, among other things, he had been left unattended by his parents. C.N. was adjudicated to be a child in need of care after a hearing on September 9, 2005. An initial Permanency Hearing was held on February 2, 2007, and a judgment was signed *145 and filed February 12, 2007.[1] A final Case Review Hearing was held on July 6, 2007, and a judgment vacating custody with OCS and granting guardianship of C.N. to a relative, Michelle Snyder, was signed and filed on August 7, 2007. It is from this judgment, the mother, Angela Noble Harte, now appeals.

LAW AND DISCUSSION
In her first assignment of error, Angela argues that the trial court erred in vacating custody without finding that reasonable efforts had been made to reunite her with C.N. We disagree.
The trial court's award of custody at a disposition hearing is entitled to great deference and will not be reversed on review except in the clearest case of abuse of that great discretion. State in Int. of J.W., XXXX-XXXX (La.App. 4 Cir. 01/10/01), 779 So.2d 961. Louisiana Ch. C. art. 702(C) orders that the trial court determine the permanent plan for a child that is most appropriate and in the best interest of the child.
Louisiana Ch. C. art. 702(E) provides, in pertinent part, that:
[T]he court shall determine whether the department has made reasonable efforts to reunify the parent and child or to finalize the child's placement in an alternative safe and permanent home in accordance with the child's permanent plan. The child's health and safety will be the paramount concern in the court's determination of the permanent plan.
In the February 12, 2007 judgment, the trial court did state, "that reasonable efforts have been made by the Department to reunify the family unit since the child was placed in foster care...." Although the trial court did not reiterate that "reasonable efforts" were made to reunify C.N. with Angela in its August 7, 2007 judgment, the record bears out that nothing had changed in the five months leading up to the final Case Review hearing.
Notably, the trial court stated in the final judgment that granting guardianship to Snyder is "consistent with [C.N.'s] health and safety and in his best interest." This is the ultimate goal of La. Ch. C. art. 702(C), and it has clearly been achieved here. Several reports found that C.N. was thriving at Snyder's house, benefitted from being near his brother A.B., and was close to his grandfather and cousins. In addition, C.N. expressed a strong opinion to stay with Snyder. Furthermore, a comprehensive report completed by the Court Appointed Special Advocate ("CASA") right before the August 12007 judgment specifically addressed the same issue and recommended C.N. be placed with Snyder. The CASA report also indicated that Angela agreed that she could not be a "good mother" for C.N. given her current incarceration. One permanent placement option, which was utilized here, is placement with a legal guardian. La. Ch. C. Art. 702(C)(3). So considering, we do not find that the trial court abused its discretion.
Next, Angela argues that the trial court violated the "Interstate Compact" on the placement of children by vacating custody. Specifically, Angela urges that La. Ch. C. Art. 1612(A) was violated in that the statute requires the concurrence of the appropriate authority in the receiving state which was not obtained. Louisiana Ch. C. Art. 1608 through 1617 outlines the provisions *146 of the Interstate Compact on the placement of children.
Louisiana Ch. C. Art. 1612(A) provides: The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment, and disposition of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-supporting, or is discharged with the concurrence of the appropriate authority in the receiving state. Such jurisdiction shall also include the power to effect or cause the return of the child or its transfer to another location and custody pursuant to law. The sending agency shall continue to have financial responsibility for support and maintenance of the child during the period of the placement. Nothing contained herein shall defeat a claim of jurisdiction by a receiving state sufficient to deal with an act of delinquency or crime committed therein.
Angela's interpretation is misguided. This article involves the interim retention of jurisdiction with Louisiana as the sending state which was essential here since C.N. was placed with Snyder in Ohio for more than two years while this matter was pending. However, once the trial court made a finding of what was in C.N.'s best interest, nothing in La. Ch. C. art. 1612 prevents OCS from placing the child in the guardianship of Snyder in Ohio.
We further note that the record reflects an incredible amount of cooperation between Ohio's Job and Family Service division and Louisiana's OCSincluding the home study investigations which allowed OCS to make their recommendations. Clearly, the sending and receiving states were aware of C.N.'s placement issue, and accordingly worked together to determine what was in the best interest of C.N. Therefore, this argument is without merit.

CONCLUSION
For the foregoing reasons, the trial court's judgment vacating custody with OCS and granting guardianship of C.N. to Michelle Snyder, is affirmed. Costs are to be borne by Angela Noble Harte.
AFFIRMED.
NOTES
[1] The February 12, 2007 judgment found that C.N. was still in need of care and continued him in the custody of OCS.