70 So.3d 1041 (2011)
STATE of Louisiana in the Interest of A.N.
No. 46,597-JAC.
Court of Appeal of Louisiana, Second Circuit.
July 20, 2011.
*1042 Bobby L. Stromile, Public Defender Office, Benton, LA, for the mother.
W. Allen Hayes, for the father.
Jessica R. Green, Legal Services of North Louisiana, for the child.
J. Schuyler Marvin, District Attorney, Graydon K. Kitchens, Jr., Assistant District Attorney, for State, DOSS.
Before CARAWAY, PEATROSS and LOLLEY, JJ.
CARAWAY, J.
The mother of an infant contests the trial court's adjudication of the child as a child in need of care and the judgment of disposition setting forth a goal of reunification/guardianship with authorization for placement in foster care. For the reasons that follow, we affirm.

Facts
On November 24, 2010, seven-month-old A.N. was temporarily removed by Instanter Removal Order from the custody of her mother, B.N., to the custody of the Webster Parish, Louisiana Department of Children and Family Services ("DCFS"), on the grounds of abuse and/or neglect and a substantial risk of immediate danger or harm to the child. The child was placed with the nonrelative caretakers who would eventually become her foster parents.
The affidavit in support of the instanter order showed that A.N. was admitted to Springhill Medical Center on November 21, 2010, with a urinary tract infection. The child was brought to the hospital by Melissa Parsons, the child's godmother. Parsons informed investigators that she had obtained physical custody of A.N. three weeks earlier when she received information raising concerns about B.N.'s home situation. Evidence showed that Parsons received custody of A.N. from *1043 B.N.'s mother ("the grandmother"). Parsons informed investigators that she learned that A.N.'s four-year-old sister had recently been removed from B.N.'s home due to sexual abuse by a 19-year-old male. Parsons knew only that B.N. was located in the Baton Rouge vicinity; the location of A.N.'s father, G.C., was unknown by Parsons. At the time the hospital was able to release A.N., the child needed follow-up care and antibiotics. A.N. had no medical insurance or Medicaid. Because A.N. had no legal caretaker to whom she could be released, the state was notified.
After the state obtained custody, a continued custody hearing was held on November 29, 2010. At the hearing, B.N. raised exceptions to venue and jurisdiction. The trial court signed a judgment continuing A.N. in the custody of DCFS on November 29, 2010. The court also issued an order to transfer venue to East Baton Rouge Parish on November 30, 2010. When East Baton Rouge Parish denied venue in a status conference held on December 16, 2010, the case was returned to Webster Parish.
On January 7, 2011, DCFS petitioned the court to declare A.N. a child in need of care on the grounds that the minor child was the victim of abuse and/or neglect and was substantially at risk of harm from her parent/caretaker. In addition to the facts given in support of the instanter removal order, the petition also alleged that the grandmother who had custody of A.N. prior to her hospitalization was homeless.
An adjudication hearing was held on February 14, 2011.[1] B.N. was present for the proceedings but G.C. did not appear. At the hearing, only DCFS investigator, Tasha Duty, testified. At the time of the hearing A.N. was ten months old. Duty testified that she made no contact with G.C. who was possibly in Mexico.
Duty testified that her agency received a report on A.N. in November of 2010. A.N. was diagnosed with a urinary tract infection for which she was kept in the hospital three days. The child required follow-up visits with a urologist and additional antibiotics. A.N. child had no medical insurance and no legal guardian to pick her up upon her discharge from the hospital. Accordingly, DCFS was notified. Duty testified that Parsons did not give her the phone number of the grandmother; Duty did not try to contact the grandmother although she knew her name. She was unable to contact A.N.'s mother or father. Because she made no contact with any legal guardian for the child, she was required to take the child into state custody.
On cross-examination, Duty admitted that her supervisor received a phone call from B.N. later in the day after the child left the hospital. Duty testified that B.N. had a four-year-old child who had been removed from her custody.
After Duty's testimony, B.N. moved for involuntary dismissal on the grounds that a legal caretaker was available for the child. The court denied counsel's request and adjudicated A.N. a child in need of care on the grounds of lack of basic support and supervision and neglect and abuse.[2] The judgment placed A.N. in the custody of DCFS with authorization for foster care placement.
DCFS submitted a case plan to the court on February 18, 2011, recommending *1044 reunification/guardianship to a relative.[3] B.N. had requested that A.N. be placed in the foster care of Jessica Adams who had custody of B.N.'s other child. DCFS of Ascension Parish conducted a home study of the Adams home and rejected placement with Adams due to lack of a support system in the home. The case plan also rejected the Adams home as a possibility for foster care for A.N.
The disposition hearing occurred on February 28, 2011. B.N. and Jessica Adams, the caregiver of B.N.'s other child, appeared for the hearing, but C.G. was not present.[4] The record showed that at the time of this hearing, B.N. was incarcerated. The caregiver/foster parents of A.N. were also present for the proceedings. B.N. objected to the contents of the case plan. The home study of Jessica and Darrell Adams was introduced into evidence.
The first witness to testify for the state was Angela Moody, the case plan worker. Her report was submitted into evidence. Moody testified that after a home study, DCFS rejected the Adams home as a possibility for placement of A.N. Moody testified that she discussed the problems with Jessica Adams including her taking the child to work with her. Other problems with the home study included Adams' failure to submit fingerprints and the fact that Mr. Adams did not provide any support for his family. Moody agreed that if these problems were solved, the case would be in a posture for restaffing in Ascension and Webster Parishes. Moody did not discuss whether Jessica Adams would be willing to put the child in daycare. Moody was aware that DCFS had placed B.N.'s other child with Jessica Adams. Moody testified that the agency was unable to find a relative for placement. Moody agreed that if B.N. were not incarcerated, the agency would be seeking to return custody of the child to her pending her compliance with the case plan. Moody testified that the agency's main concern for B.N. was substance abuse.
Moody testified that A.N. did not receive Medicaid until after she was placed in foster care. Before B.N.'s incarceration, the agency arranged for B.N. and the grandmother to visit A.N. in Webster Parish once a month. Moody agreed it would be feasible for A.N. to be in Ascension Parish for visitation but noted that the Baton Rouge court had declined jurisdiction. She testified that the agency had authority to transfer the case if B.N. requested transfer.
Jessica Adams testified for B.N. and stated she lives in White Castle, Louisiana, in Iberville Parish. Adams testified that she now had an operable car although at the time of the home study, she did not. Her cousin took her to work. She is employed at Majestic Home Care and has one patient who is her grandmother. Adams testified that she works Monday through Sunday from 3:00 to 7:00 p.m. On Wednesday and Mondays she stays until 8:00 p.m. She has no other job, although she worked at a fast food chain at the time of the home study. Adams testified that she takes the children with her when she works at her grandmother's. She stated that she has taken care of children since *1045 she was 11 years old. Adams never had a child removed from her care and was never investigated by child protection. She prepared a room for A.N. Her children get WIC and she receives food stamps. Adams testified that she was willing to get fingerprinted.
The trial court entered a Judgment of Disposition finding that the best interest of A.N. was served by her remaining in the custody of DCFS as a child in need of care. The court approved and made a part of the judgment the case plan submitted by DCFS, thus denying Adams as an option for foster care of A.N. and placing her in the foster care of the unrelated caregivers.

Discussion
On appeal, B.N. urges error in the trial court's adjudication of B.N. as a child in need of care. She contends that at the adjudication hearing on February 14, the state failed to meet its burden of proof through the hearsay testimony of Duty. B.N. also argues urges error in the Judgment of Disposition which she contends did not provide for the least restrictive placement for A.N. because placement with Jessica Adams would have kept the family unit intact.
Before a juvenile court may adjudicate a child in need of care under Title VI of the Louisiana's Children's Code, the State must allege and prove by a preponderance of the evidence one or more of the statutorily expressed allegations in La. Ch.C. art. 606(A). State ex rel. J.A., 99-2905 (La.1/12/00), 752 So.2d 806. Specifically, Article 606(A) provides as follows:
Allegations that a child is in need of care must assert one or more of the following grounds:
(1) The child is the victim of abuse perpetrated, aided, or tolerated by the parent or caretaker, by a person who maintains an interpersonal dating or engagement relationship with the parent or caretaker, or by a person living in the same residence with the parent or caretaker as a spouse whether married or not, and his welfare is seriously endangered if he is left within the custody or control of that parent or caretaker.
(2) The child is a victim of neglect.
(3) The child is without necessary food, clothing, shelter, medical care, or supervision because of the disappearance or prolonged absence of his parent or when, for any other reason, the child is placed at substantial risk of imminent harm because of the continuing absence of the parent.
(4) As a result of a criminal prosecution, the parent has been convicted of a crime against the child who is the subject of this proceeding, or against another child of the parent, and the parent is now unable to retain custody or control or the child's welfare is otherwise endangered if left within the parent's custody or control.
(5) The conduct of the parent, either as principal or accessory, constitutes a crime against the child or against any other child of that parent.
This statute makes clear that all of the grounds listed as required showings are based on either abuse or neglect, criminal and noncriminal. Thus, before a child may be adjudicated a child in need of care, the court must first make a predicate finding of abuse or neglect. Id.
One of the statutory grounds provided for in Article 606 is that the "child is a victim of neglect." La. Ch.C. art. 606. "Neglect" means the refusal or willful failure of a parent or caretaker to supply the child with necessary food, clothing, shelter, care, treatment, or counseling for any injury, illness, or condition of the child, as a result of which the child's physical, mental, or emotional health is substantially threatened *1046 or impaired. Id. The Legislature defined a "neglected" child in broad terms precisely because foreseeing all the possible factual situations that may arise is impossible. The broad definition enables experienced juvenile courts to apply their training and experience to the unique facts and circumstances of each case. Id.
Abuse is defined in La. Ch.C. art. 603(1) as any one of the following acts which seriously endanger the physical, mental or emotional health of the child:
(1)(a) The infliction, attempted infliction, or as a result of inadequate supervision, the allowance of the infliction or attempted infliction of physical or mental injury upon the child by a parent or any other person.
(b) The exploitation or overwork of a child by a parent or any other person.
(c) The involvement of the child in any sexual act with a parent or any other person, or the aiding or toleration by the parent or the caretaker of the child's sexual involvement with any other person or of the child's involvement in pornographic displays, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
Adjudication of a child in need of care is warranted when a parent shows a repeated pattern of placing a child at risk and exposing a child to a lack of adequate shelter. State ex rel. L.M., 46,078 (La. App.2d Cir.1/26/11), 57 So.3d 518; State ex rel. A.R., 99-0813 (La.App. 1st Cir.9/24/99), 754 So.2d 1073. At the adjudication hearing, the state bears the burden of proving by a preponderance of the evidence that the child is a child in need of care. La. Ch.C. art. 665; State ex rel. L.B., 08-1539 (La.7/17/08), 986 So.2d 62; State ex rel. L.M., supra. It is not the duty of the state to prove its case beyond a reasonable doubt, by clear and convincing evidence, or to disprove every hypothesis of innocence. State ex rel. L.B., supra; State ex rel. L.M., supra.
It is well settled that an appellate court cannot set aside a juvenile court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. In re A.J.F., 00-0948 (La.6/30/00), 764 So.2d 47; State ex rel. L.M., supra. In a manifest error review, it is important that the appellate court not substitute its own opinion when it is the juvenile court that is in the unique position to see and hear the witnesses as they testify. In re A.J.F., supra; State ex rel. L.M., supra. Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the juvenile court. In re A.J.F., supra; State ex rel. L.M., supra. If the juvenile court's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. In re A.J.F., supra; State ex rel. L.M., supra.
The trial court's award of custody at a dispositional hearing is entitled to great deference and will not be reversed on review except in the clearest case of abuse of that great discretion. State ex rel C.N. v. Harte, 42,977 (La.App.2d Cir.1/9/08), 974 So.2d 143; State ex rel. C.N. v. Hawkinberry, 42,085 (La.App.2d Cir.2/28/07), 953 So.2d 870.

Child in Need of Care Adjudication
B.N. first contends that it was error for the trial court to adjudicate A.N. as a child in need of care based upon the hearsay testimony of Duty received into evidence over B.N.'s objections at the February 14 hearing. La. C.C. art. 662 provides in pertinent part that "the adjudication *1047 hearing shall be conducted according to the rules of evidence applicable to civil proceedings."
From our review of the record, any information obtained by Duty from other individuals, including Parsons and her supervisor, should not have been admitted into evidence through Duty's testimony of that hearsay. Nevertheless, we find Duty's personal knowledge and observations adequate to meet the state's burden of showing that A.N. was the victim of neglect. Duty's testimony established that no legal guardian was present at the time of A.N.'s release from the hospital even though the child had been admitted to the hospital three days earlier. The locations of the child's parents were unknown to Duty, and she received no further information about their whereabouts from Parsons. From those facts, Duty could have reasonably concluded that A.N. was the victim of neglect and lack of basic support and supervision.
Moreover, B.N. failed to contest the February 14 adjudication through emergency supervisory review under La. Ch.C. art. 338 thus allowing the case to proceed to the disposition hearing two weeks later. At those proceedings it was established that B.N. was incarcerated and unavailable to care for her children. Obviously, the fact of B.N.'s imprisonment is sufficient to satisfy the state's burden of establishing that A.N. was a child in need of care. La. Ch.C. art. 606(A)(3). Thus, when viewed in their entirety, the facts of record are sufficient to affirm the trial court's adjudication judgment.

Judgment of Disposition
B.N. also contests the Judgment of Disposition resulting from the February 28 hearing. She argues that the least restrictive placement and best interest of the child required that the court place A.N. in the custody of Jessica Adams, rather than unrelated foster parents. We find no abuse of discretion in the trial court's placement. Testimony established that after a home study, DCFS rejected the Adams home as a possibility for placement of A.N. partly because of Adams's noncompliance and lack of financial support for the family. Evidence also established that no family member was available for placement of the child, as the grandmother was not a viable option for placement. From this evidence, the trial court could have reasonably concluded that the placement of A.N. into foster care served the child's best interests and was the least restrictive placement for her. Because this appeal involves an initial case plan, the possibility of modification of the plan and reunification remains for B.N. upon her compliance with requirements of DCFS and the case plan.

Conclusion
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to B.N.
AFFIRMED.
NOTES
[1] At an answer hearing on January 13, 2011, it was revealed that B.N. was not present because she was incarcerated in a south Louisiana prison.
[2] The court rendered oral judgment on February 14, 2011. A signed judgment followed on March 22, 2011.
[3] The case plan noted that B.N. was pregnant and wanted to give the unborn child up for adoption. On January 10, 2011, B.N. was arrested for possession of drug paraphernalia, possession of a Schedule I drug and a meth lab.
[4] C.G.'s brother and a brother-in-law appeared for the hearing but were removed from the courtroom because they were not parties to the proceedings. C.G.'s brother informed the court that A.N.'s father was in Mexico and unable to appear at the proceedings.